```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/20/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

L.M.G.,

                       Petitioner,

-against-

JUDITH ALMODOVAR et al.,

                       Respondents.

26-CV-00890 (MMG)

**OPINION & ORDER**

---

MARGARET M. GARNETT, United States District Judge:

Petitioner L.M.G. came to the United States with his family in April 2021 to escape political persecution in Honduras. When he presented himself at the border, U.S. Immigration and Customs Enforcement ("ICE") granted him humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Petitioner and his family moved to Upstate New York, and Petitioner lived there until June 19, 2025, when he was arrested by ICE. At no point before Petitioner was arrested did ICE inform him that his parole had been terminated or revoked. By arresting Petitioner without providing such notice, the Government violated his due process rights. Accordingly, and for the reasons set forth in greater detail below, L.M.G.'s petition is GRANTED and he must be released from custody.

I.    **RELEVANT FACTS**[1] **AND PROCEDURAL HISTORY**

Petitioner L.M.G. is a Honduran national. Pet. ¶ 1. In December 2020, he fled Honduras to escape political persecution and gang violence. *Id.*; Dkt. No. 1-1 ¶ 3. In April 2021, Petitioner and his family reported to the U.S. border for a scheduled appointment with Customs

---

[1] The following facts are taken from the Petition and the declarations accompanying the briefs of the parties. *See* Dkt. Nos. 1, 14–16. The Court refers to the Petition for Writ of Habeas Corpus, Dkt. No. 1, as "Pet."

1

and Border Protection, via the CBPOne app created by the Department of Homeland Security. Pet. ¶ 3. During that appointment, an immigration officer served Petitioner with a Form I-862 Notice to Appear charging him as inadmissible, but the document was never filed with the immigration court and does not contain any date, time, or location where Petitioner was to "appear." Dkt. No. 16 ¶¶ 6, 8; Dkt. No. 1-1 ¶ 4. According to Petitioner, he was also told by the immigration officer that he should pursue his asylum application through the immigration court process that would be initiated through the Notice to Appear. Dkt. No. 1-1 ¶ 4. Also during the appointment, immigration officials granted Petitioner and his family humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A) and subsequently allowed them to enter the United States pending adjudication of their immigration status. Dkt. No. 1-1 ¶ 3; Dkt. No. 16 ¶ 7. After being paroled into the country, Petitioner and his family settled in Upstate New York where he found employment as a housekeeper. Pet. ¶¶ 30–31. In the years that followed, Petitioner regularly contacted the immigration court to find out when his family's hearing would take place but was repeatedly told that their case did not appear in the court's system.[2] Dkt. No. 1-1 ¶ 4.

Between May 2022 and January 2024, local police cited or arrested Petitioner on four occasions, resulting in two misdemeanor criminal convictions. *Id.* ¶ 6. One of the convictions resulted in a sentence of three years' probation. *Id.* On June 19, 2025, Petitioner arrived at a routine probation appointment. *Id.* ¶ 7. Once there, he was arrested by ICE officers and transported to the Orange County Correctional Facility in Goshen, New York. Pet. ¶ 32.

---

[2] The Government acknowledged at the hearing that the Notice to Appear was never properly filed by immigration officials, which explains why there was no case opened for Petitioner and his family and why he was never able to get a court date to begin his request for asylum, as he was instructed to do during the family's border appointment.

2

On the day of his arrest, Petitioner was served with a warrant for his arrest and a Notice of Custody Determination (Form I-286), which stated that he would be detained by the Department of Homeland Security. *See* Dkt. Nos. 15-7, 15-8. On June 25, 2025, after he had been detained for six days, ICE served Petitioner with a Notice to Appear which charged him as removable pursuant to Sections 212(a)(7)(A)(i)(I) and 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act. Dkt. No. 15-9. On August 27, 2025, Petitioner filed a self-prepared I-589 application for asylum. Dkt. No. 1-1 ¶ 10. On December 9, 2025, an immigration judge denied his application and ordered him removed to Guatemala pursuant to a third-country removal program. *Id.* ¶ 17. Petitioner appealed that decision on January 7, 2026, and his appeal remains pending. *Id.* ¶ 18.

From the eight-month period between June 19, 2025, and February 2, 2026, Petitioner remained detained at the Orange County Correctional Facility. On February 2, 2026, the day that Petitioner filed the instant Petition, Petitioner was transported to the Miami Correctional Center in Bunker Hill, Indiana, where he is currently detained. Dkt. No. 16 ¶ 22. On February 3, 2026, the Court issued an order to show cause enjoining the Government from removing Petitioner, soliciting briefs from the parties, and convening a hearing that occurred on February 13, 2026.[3] Dkt. Nos. 1, 3.

## DISCUSSION

### I. STATUTORY AND REGULATORY BACKGROUND FOR PAROLE

8 U.S.C. § 1182(d)(5)(A) permits the Secretary of Homeland Security to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for

---

[3] Citations to the transcript of the February 13, 2026 hearing are denoted as "Hr'g. Tr. [Pincite]."

admission to the United States." The parole can be terminated when "in the opinion of the Secretary of Homeland Security," "the purposes of such parole . . . have been served." *Id.*

8 C.F.R. § 212.5 sets forth two different scenarios in which humanitarian parole issued pursuant to 8 U.S.C. § 1182(d)(5)(A) can be terminated. It can be terminated automatically (1) upon an individual's departure from the United States, or (2) at the expiration of the time for which the individual's parole was authorized if the authorization was only for a limited period. 8 C.F.R. § 212.5(e)(1). In all other scenarios, parole can only be terminated "on notice . . . upon accomplishment of the purpose for which parole was authorized or when in the opinion of [an official with prescribed authority] neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* § 212.5(e)(2)(i). Courts in this Circuit have interpreted this regulation to require (1) "parole revocation to be analyzed on a case-by-case basis" and (2) "a decision to revoke parole" to "attend to the reasons an individual noncitizen received parole." *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025). Under the regulations, service of a charging document on a noncitizen can also "constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i); *see also id.* § 244.1 (defining a "charging document" as "the written instrument which initiates a proceeding before an Immigration Judge" and specifying that "[f]or proceedings initiated after April 1, 1997, these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien.").

## II.  DISCUSSION

Petitioner alleges that his detention is unlawful for three reasons. First, he alleges that he was arrested and detained without due process. Second, he alleges that the Government's decision to detain him pursuant to 8 U.S.C. § 1225(b)(2) violates the Immigration and

4

Nationality Act.  Third, he alleges that his unreasonably prolonged detention violates his due process rights.  The Court need not address the latter two arguments because, regardless of the statutory basis for his detention or its duration, Petitioner's arrest and detention violated his due process rights.

Petitioner argues that his arrest and subsequent detention violated due process because he was detained "without any individualized consideration and without notice and appearing before a neutral arbiter to show changed circumstances, with an opportunity to respond." Pet. ¶ 4.  The record supports this allegation.  At the time Petitioner was arrested, the only document besides the arrest warrant that the Government served on him was a "Notice of Custody Determination." Dkt. No. 15-7; Dkt. No. 16 ¶ 12.  That notice made no mention of Petitioner's parole status.  And no other document or other evidence in the record reflects that Petitioner was provided <u>any</u> notice that his parole was terminated before or at the time of his arrest.[4]

The Government's brief in opposition did not respond at all to this allegation. Furthermore, at oral argument, the Government could not identify a single document that showed that Petitioner was provided notice of the revocation of his parole.  The Government claimed that Petitioner's parole was only authorized for a year when granted and thus automatically terminated in April 2022.  However, the Government could not identify any documentary or other record evidence supporting that assertion; its only support for the claim was counsel's representation that such a timeline was typical for individuals granted humanitarian parole,

---

[4] Petitioner was ultimately served with a Notice to Appear.  Dkt. No. 16 ¶ 16.  However, the Notice to Appear was not served on Petitioner until June 25, 2025—six days *after* his arrest and detention.  *Id.*  This document cannot have provided Petitioner sufficient (or any) notice of the revocation of his parole in advance of his arrest.

5

which the Court cannot credit as a basis for arrest and detention, without notice or process. *See* Hr'g. Tr. at 5:4–6.

Accordingly, the record in this case adequately establishes that Petitioner's parole was revoked without the requisite notice. *See, e.g.*, Pet. ¶ 58. The record also does not reflect that the Government "made any assessment – much less an individualized assessment – before revoking Petitioner's parole." *Diallo v. Maldonado*, No. 25-CV-05740 (DG), 2025 WL 3158295, at *5 (E.D.N.Y. Nov. 12, 2025). Because Petitioner was not provided with sufficient (or any) process in connection with the revocation of his parole, the revocation of his parole without notice or any opportunity to respond violated Petitioner's due process rights. *See Savane v. Francis*, 801 F. Supp. 3d 483, 492 (S.D.N.Y. 2025) ("Respondents violated Petitioner's due process rights because they did not comply with the statutorily required process for revoking [his] parole").

In the Second Circuit, courts apply the three-factor balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976) "to determine what process is due to noncitizens in removal proceedings."[5] *Black v. Decker*, 103 F.4th 133, 147 (2d Cir. 2024). The *Mathews* factors are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

---

[5] Because Petitioner's detention was "invalid at its inception" and the remedy he seeks is release, weighing the *Mathews* factors may not be necessary here. *See Rojas v. Almodovar*, No. 25-CV-07189 (LJL), 2025 WL 3034183 at *8 (S.D.N.Y. Oct. 30, 2025). The Court nonetheless weighs these factors in keeping with the decisions of several courts in this Circuit addressing petitions brought under similar circumstances. *See Savane*, 801 F. Supp. 3d at 493; *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 416 (S.D.N.Y. 2025); *Mata Velasquez*, 794 F. Supp. 3d at 152.

procedural requirement would entail." *Mathews*, 424 U.S. at 335.  Each of these factors weighs in favor of Petitioner.

First, as the Second Circuit has noted, the private interest at stake is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851.  Here, "[p]rior to being detained without notice, Petitioner enjoyed all the privileges of a free man with the permission of the Government, and thus acquired a liberty interest under the Due Process Clause." *Rojas*, 2025 WL 3034183, at *7; *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others."); *Savane*, 801 F. Supp. 3d at 493–94 (applying *Morrissey* in the context of humanitarian parole pursuant to Section 1182(d)(5)(A)).  Furthermore, because Petitioner was not provided with any notice of the revocation of his parole, "[t]here is no administrative mechanism by which [Petitioner] could have challenged his detention." *Velasco Lopez*, 978 F.3d at 851.  Accordingly, the first *Mathews* factor weighs strongly in Petitioner's favor.

Second, Petitioner's detention without notice of the termination of his parole created a high risk of the erroneous deprivation of his liberty.  As Petitioner notes, "ICE revoked [his] release and immediately arrested and detained him without any evidence of individualized review, without setting forth the basis for the revocation and redetention, and without first providing any hearing or any other form of process."  Pet. ¶ 58.  Petitioner's "liberty cannot be abridged without 'adequate procedural protections.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).  For individuals on humanitarian parole, "due process requires, at a minimum, the opportunity for [Petitioner] to submit evidence relevant to whether the government should revoke his parole

before it makes a revocation decision." *Mata Velasquez*, 794 F. Supp. 3d at 153.  Petitioner was provided with no such opportunity; he was deprived of his liberty without *any* procedural protection.  Furthermore, "Respondents provided no indication that an individualized determination was made as to the revocation of Petitioner's parole; nor do they articulate, even now, either that the purpose for which Petitioner's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States." *Savane*, 801 F. Supp. 3d at 494.  Absent the Government's individualized determination that Petitioner's parole should be revoked and the ability for Petitioner to contest that determination, there is a high risk that Petitioner's detention was erroneous.

The third *Mathews* factor requires consideration of "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Black*, 103 F.4th at 153.  Here, requiring the Government to release Petitioner, make an individualized determination as to the revocation of Petitioner's parole, and to provide notice to Petitioner of the revocation such that he can challenge the determination would not impose any additional administrative burden on the Government. "Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020).  As set forth above, the Government's regulations required it to make an individualized determination before revoking Petitioner's parole and to provide notice to Petitioner.  It did not do so.  Requiring the Government to follow its own regulations inflicts no additional administrative burden than would have already been inflicted had the Government properly revoked Petitioner's parole.  This factor also weighs in Petitioner's favor.

Because Petitioner "was owed due process but provided none, his petition for a writ of habeas corpus shall be granted. The question remains as to the appropriate relief." *Rojas*, 2025 WL 3034183, at *8. Petitioner requests to be transported back to the Southern District of New York and released from custody. Hr.'g Tr. at 24:2–7. The Government represented at the hearing that if the Court orders Petitioner released, they will arrange for him to be transported back to this district and then released. *Id.* at 24:14–20. The sole question, then, is whether release is the appropriate remedy. The Court finds that it is. Where, as here, an individual's "imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Rojas*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025). Because his detention was unlawful from its inception, Petitioner must be released. *See Savane*, 801 F. Supp. 3d at 495 (ordering the immediate release of a Petitioner who was detained without notice of the revocation of his parole).

## CONCLUSION

For the foregoing reasons, the Court GRANTS L.M.G.'s habeas petition. The Government is hereby ORDERED, by no later than **February 27, 2026,** to transport L.M.G. to the Southern District of New York and release him from custody.

Dated: February 20, 2026
   New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

9